**Wm. Jere Tolton, III, OSB No. 192692**
jtolton@kilmerlaw.com
**Robert B. Miller, OSB No. 960068**
RBMillerConsulting@gmail.com
KILMER, VOORHEES & LAURICK, P.C.
2701 NW Vaughn Street, Suite 780
Portland, Oregon  97210
Telephone: (503) 224-0055
Fax: (503) 222-5290

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| TSUTOMU SHIMOMURA, | |
| Plaintiff, | Case No. 3:22-cv-00455-SB |
| vs. | **DEFENDANT'S OBJECTIONS TO FINDINGS & RECOMMENDATION** |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

## TABLE OF CONTENTS

I.    SUMMARY OF THE CLAIM .................................................................... 1

II.   SUMMARY OF THE OBJECTIONS TO THE MAGISTRATE'S
      FINDINGS AND RECOMMENDATION.......................................... 2

III.  DECISION UNDER REVIEW................................................................ 3

IV.   FACTS IN SUPPORT OF THE OBJECTIONS ............................... 5

V.    PROOF OF DISABILITY ...................................................................... 11

      A.    Unum Finds the Proof Offered to be Insufficient
            to Establish the Claim. ...................................................... 11

      B.    Dr. Lewis's Opinions Were Based on Conflicting
            and Contradictory Facts. .................................................. 13

      C.    Testing.................................................................................... 18

      D.    An IME After the Claim was Filed.................................... 20

VI.   OBJECTIONS.......................................................................................... 21

      A.    The Magistrate Erred in Finding Unum Did Not
            Prove Prejudice From the 25-Month Delay. ................ 21

      B.    The Magistrate Erred in Finding that Unum's Determination
            of the "Time Relevant" Period was "A Moving Target."
            [F&R, pp. 35-36].................................................................. 22

      C.    The Magistrate Erred in Finding Unum Did Not Make
            this Distinction in its Determination.
            [F&R, p. 35].......................................................................... 22

      D.    The Magistrate's Finding That "it could take at least several months
            for anyone to know if an mTBI event has resulted in symptoms
            that persisted beyond the typical timeframe for recovery . . ."
            is Not Relevant to the Court's Determination that Unum was
            Prejudiced by the Delayed Filing. [F&R, p. 29] ................ 23

      E.    The Magistrate Erred in Finding Shimomura's Allegations He
            Sustained a Closed Head Injury in the Accident, and Generalized
            Findings on Imaging Studies Conflicts With or Diminishes
            Unum's Conclusion that Late Filing Left it With No Means
            to Independently Assess Shimomura's Cognition.  [F&R, pp. 30-31] ................ 24

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

F. The Magistrate Erred in Finding Shimomura Proved His Claim. ........................ 24

  1. The Magistrate erred in finding Dr. Crawford did not address Dr. Lewis's opinions and "the authorities Dr. Lewis relied on." [F&R, p. 32] ............................................................................... 24

  2. The Magistrate's generalized comments on proof of claim are not relevant to the Court's determination on prejudice. [F&R, p. 33] ............................................................................... 25

  3. The Magistrate's finding describing in hypothetical terms all the information Unum might have found does not address the unrefuted fact that Unum was prejudiced by a lack of testing. [F&R, p. 34] ............................................................................... 25

  4. The Magistrate erred in finding that Unum did not prove prejudice because it did not request work emails and interview of Shimomura and interviews of co-workers in 2019. .................................. 25

  5. The Magistrate correctly found Unum did not cite the date Shimomura's coverage ended, August 21, 2017, as a basis for denial. [F&R, pp. 24-25] ...................................................... 25

  6. The Magistrate erred in finding that "a determination of Plaintiff's credibility is not part of the Court's de novo review" [because] Defendant never offered Plaintiff's lack of credibility as a ground for denying his LTD claim (see Admin. R. Ex. A at 962-68, 1107-16) . . . ." [F&R, p. 37] .................................. 26

VII. CONCLUSION ................................................................................. 31

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

# TABLE OF AUTHORITIES

**Cases**

*Cisneros v. UNUM Life Ins. Co. of Am.*,
    134 F.3d 939 (9th Cir. 1998) ................................................................. 21

*Collier v. Lincoln Life Assurance Co. of Bos.*,
    53 F.4th 1180 (9th Cir. 2022) ...................................................... 3, 25, 26

*Demer v. IBM Corp. LTD Plan*,
    835 F.3d 893 (9th Cir. 2016) ................................................................. 29

*Gilliam v. Nevada Power Co.*,
    488 F.3d 1189 (9th Cir. 2007) ............................................................... 22

*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*,
    370 F.3d 869 (9th Cir. 2004) ................................................................. 24

*Knappenberger v. Cascade Ins. Co.*,
    259 Or. 392, 487 P.2d 80, (1971) ......................................................... 22

*Lusch v. Aetna Cas. & Sur. Co.*,
    272 Or. 593 (1975) ................................................................................ 21

*Roeder v. Guardian Life Ins. Co.*,
    821CV01715JVSKES, 2022 WL 18145081 (C.D. Cal. Dec. 6, 2022) .................................... 5

*Salomaa v. Honda Long Term Disability Plan*,
    642 F.3d 666 (9th Cir. 2011) ................................................................. 24

*Smagala v. Sequoia Ins. Co.*,
    969 F.Supp.2d 1271 (D. Or. 2013) ........................................................ 21

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

Defendant Unum Life Insurance Company of America ("Unum") respectfully objects to the July 3, 2023 Findings and Recommendation [Doc. 31] as follows:

## I.   SUMMARY OF THE CLAIM

Shimomura claimed he was disabled on and after August 9, 2016 by symptoms of a closed head injury sustained in a car accident.  He did not notify Unum of the claim until September 14, 2018 despite the policy's one-year deadline.  The only medical records generated in the intervening 25 months are the emergency room discharge report from the day of the accident and session notes and an opinion from his psychiatrist, Dr. Lewis.  The discharge report makes no mention of a head injury.  [AR 000279-293 – Doc. 15-3, pp. 124-138]

Dr. Lewis's notes are summaries of what Shimomura told him during their sessions from September 2016 through January 2019.  Dr. Lewis's notes have no mental status exams, no neurological testing, no recorded observations of impaired behavior (except as noted in the first session), no CT scans, MRI imaging or brain imaging studies any time after the accident, no referrals to or input from any other healthcare providers, no independent examinations and no notes of input from anyone else.  Dr. Lewis said Shimomura claimed persistent, disabling, symptoms from a head injury for over two years, but there is no mention in the records that Dr. Lewis considered these measures or thought they were necessary.  In the 25 months after the accident and before notice to Unum, Dr. Lewis recorded just two observations of cognitive dysfunction or impaired behavior:  a forgotten story fragment and briefly forgotten briefcase in the September 2016 session, the first after the car accident.  [AR 000707-708 – Doc. 15-7, pp. 47-48]

Unum denied the claim because it was prejudiced by the late notice.  Unum had insufficient information available in and after Shimomura filed the claim in September of 2018 to conduct an adequate investigation into Shimomura's work capacity through and beyond the 90-day elimination period from August 9, 2016 through November 7, 2016.  Although late notice prejudice voids coverage, Unum reviewed all of the evidence.  Doing so does not waive the coverage defense.  Unum determined the evidence was insufficient to establish the claim.

KILMER, VOORHEES & LAURICK,P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

## II.    SUMMARY OF THE OBJECTIONS TO THE MAGISTRATE'S FINDINGS AND RECOMMENDATION

The Magistrate erred in finding Unum did not prove prejudice from the 25-month delay between the claimed onset of disability on August 9, 2016 and the time Shimomura filed his disability claim with Unum on September 14, 2018.  Unum submitted evidence that based on a review of the available information timely measures including neurological testing or an IME were necessary to determine Shimomura's work capacity through and beyond the 90-day elimination period that began on August 9, 2016.  Unum submitted evidence that relevant information could not be developed through those measures after Shimomura produced his doctor's records in 2019.  Shimomura opposed that evidence with an opinion from Dr. Lewis.  Dr. Lewis's opinion is limited to his conclusion that he did not need testing to determine Shimomura was disabled.  Dr. Lewis did not offer any evidence or opinion that testing was not necessary to a disability determination generally.  Dr. Lewis did not dispute Unum's evidence that testing in 2019 would not yield useful information about Shimomura's work capacity in and beyond the policy's 90-day elimination period that began August 6, 2016.

The Magistrate erred in finding Shimomura met his burden to prove his claim.  The only evidence offered to prove the claim is Dr. Lewis's session notes and opinion.  Dr. Lewis diagnosed a mild traumatic brain injury (mTBI) and persistent post-concussive syndrome (PPCS) based on Shimomura's description of the accident and his description of his symptoms in the days and weeks after the accident.  Dr. Lewis's opinion that Shimomura is unable to perform the material duties of his occupation as a CEO is based solely on what Shimomura told him about his job performance after the accident.  Dr. Lewis sought no input from any other source.  His contemporaneous notes make no mention that he considered imaging studies or neurocognitive testing.

In 2019, Unum and its consulting neurologist found the absence of any mention of imaging studies or neurocognitive testing was inconsistent with persistent, disabling, symptoms in a patient with mTBI and PPCS.  Dr. Lewis responded that he assumed Shimomura's injury occurred at a microscopic level not detectable by CT scans or MRI.  Dr. Lewis's assumption is untested and it

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

conflicts with his own practice.  When Dr. Lewis saw Shimomura in 2012 for cognitive complaints after an earlier closed head injury, Dr. Lewis not only obtained an MRI of the brain but noted the specific findings in that study of evidence of damage caused by the injury.  Dr. Lewis's own practice is consistent with Unum's finding that imaging is expected for patients who actually have persistent disabling symptoms from a mTBI or PPCS.

Dr. Lewis also responded that he did not need neurocognitive testing because he found Shimomura was disabled from the high-level thinking required of a CEO by cognitive "decrements" too subtle to be detected through testing.  Dr. Lewis's explanation is an assumption and his reference to subtle decrements conflicts with what he recorded in his notes.  Dr. Lewis's session notes for at least a year after the accident say Shimomura described a "wide range of cognitive deficits." [AR 000697-700; 702-707 – Doc. 15-7, pp. 37-40; 42-47]  Dr. Lewis noted the deficits Shimomura described were more than deficits in attention and executive function.  [*Id.*] Shimomura's claim is supported solely by Dr. Lewis's opinion and that opinion is insufficient to carry the burden of proof.

At times in the Findings and Recommendation, the Magistrate suggests Unum waived issues or arguments developed in the briefs.  *See, e.g.*, F&R, p. 37 ("during oral argument, Defendant represented that the only issue before the Court . . . .").  Unum has not waived an issue or argument discussed in the 86 pages Unum filed in its Motion (Doc. 17), Response (Doc. 20) and Reply (Doc. 25).

## III.  <u>DECISION UNDER REVIEW</u>

On *de novo* review of an ERISA claims administrator's decision a "court must examine only the rationales the plan administrator relied on in denying benefits and cannot adopt new rationales that the claimant had no opportunity to respond to during the administrative process." *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1182 (9th Cir. 2022).  Here are the bases for Unum's decision to deny benefits:

KILMER, VOORHEES & LAURICK,P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

**Initial Claim Decision**:

    "The Benefits Center determined Mr. Shimomura filed his claim late according to the specific requirements of the Long Term Disability policy.  This late filing prejudiced Unum's ability to accurately and fairly review the claim to determine whether Mr. Shimomura was limited from performing the material and substantial duties of his regular occupation as of his reported date of disability.  Accordingly, no benefits were payable on Mr. Shimomura's Long Term Disability claim.

    "Additionally, the Benefits Center concluded Mr. Shimomura did not meet the Life definition disability waiver due to his ongoing return to work (part-time/reduce) earnings and was not eligible for waiver of his life insurance premiums."

**Appeal Decision**:

    "We determined the decision on the claim is correct.

    "Our review has determined the Long Term Disability claim was filed late which prejudiced Unum's ability to determine whether Mr. Shimomura was limited from performing the material and substantial duties of his regular occupation as of his reported date of disability.

\* \* \*

    "As part of the appeal on review of the claim, we referred the file to our neurologist for review.   This review concluded, after considering all of the medical evidence made available for review, there remains insufficient information to support Mr. Shimomura was limited from performing the material and substantial duties of his regular occupation as of August 09, 2016."

    The letters contain substantially more information than these excerpts and the entire letters are relevant to Unum's bases for denial.  [AR 001107-1108; AR001111 – Doc. 15-11, pp. 69-70; Doc. 15-12, p. 2]  The opinions of Unum's medical experts and Dr. Lewis, and the statements by Shimomura, are evidence Unum relied on forming its rationales for the decision and are within the scope of review under *Collier*.  Unum's decision includes evaluations of the persuasiveness of the doctors' opinions based on the information the doctors' relied on in reaching those opinions.  Unum also considered the credibility of Shimomura's statements in context with all of the

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

evidence.  Those evaluations are part of the claim administration and within the scope of review under *Collier*.  *See, e.g., Roeder v. Guardian Life Ins. Co.*, 821CV01715JVSKES, 2022 WL 18145081, at *2 (C.D. Cal. Dec. 6, 2022) ("In a trial on the record, the court 'can evaluate the persuasiveness of conflicting testimony and decide which is more likely true.'" *Armani v. Nw. Mut. Life Ins. Co.*, 2014 WL 7792524, at *8 (C.D. Cal. Nov. 25, 2014) (quoting *Kearney*, 175 F.3d at 1095).").

## IV.    FACTS IN SUPPORT OF THE OBJECTIONS

Shimomura filed a claim for disability due to cognitive symptoms that he described and that he said were caused by a head injury sustained in a car accident.  [AR 000041 (Employee Statement § C) – Doc. 15-1, p. 41] [1]  He claims he was continuously and totally disabled from his occupation beginning August 9, 2016.  [*Id*.; AR 001089 – Doc. 15-11, p. 51]  The policy requires notice no later than 12 months after disability begins.  [AR 000080 – Doc. 15-1, p. 80]  Shimomura waited 25 months to notify Unum.  [AR 000036; AR 000041-46 – Doc. 15-1, p. 35; pp. 41-46] He has offered no reason for the delay.

Unum denied the claim because the late notice caused prejudice by precluding Unum from conducting a reasonable investigation.  Unum also denied the claim after reviewing all of the evidence and determining it was insufficient to establish disability.  Both conclusions were made with input from Unum's medical consultants, including a medical doctor board certified in neurology.  Unum's medical consultants reviewed the all the evidence before forming their opinions and advising Unum.

The only medical records generated in the 25 months between the accident and when Shimomura filed the claim are the emergency room discharge report from the day of the accident and session notes and an opinion from his psychiatrist, Dr. Lewis.  The discharge report makes no mention of a closed head injury from the accident.  [AR 000279-283 – Doc. 15-3, pp. 124-128] Dr. Lewis's notes start with sessions for a closed head injury in 2006 through October 2015

---

[1] Unum will use the term employed by Shimomura's doctor – mild traumatic brain injury, often abbreviated as mTBI.

KILMER, VOORHEES & LAURICK,P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

[AR 000680-696; AR 000710-715 – Doc. 15-7, pp. 20-36; pp. 50-55], and resume in September 2016 after the car accident. [AR 000697-709; AR000820-826 – Doc. 15-7, pp. 37-46; Doc. 15-8, pp. 61-67]  Shimomura first provided them to Unum in February 2019.  [AR 000562 – Doc. 15-6, p. 22]

Dr. Lewis's notes are summaries of what Shimomura told him during their sessions. His notes have no mental status exams, no neurological testing, no recorded observations of impaired behavior (except as noted in the first session), no CT scans, MRI imaging or brain imaging studies any time after the accident, no referrals to or input from any other healthcare providers, no independent examinations and no notes of input from anyone else.  There is no mention in the notes that these measures were considered or tried.  In the 25 months after the accident and before notice to Unum, Dr. Lewis recorded just two observations of cognitive dysfunction or impaired behavior: a forgotten story fragment and briefly forgotten briefcase in the September 2016 session, the first after the car accident.  [AR 000707-708 – Doc. 15-7, pp. 47-48]

The summaries of what Shimomura told Dr. Lewis are often set out in quotation marks. Shimomura told Dr. Lewis that immediately following the August 9, 2016 car accident Shimomura had a "resumption of former symptoms" he'd described to Dr. Lewis in periodic sessions from 2007 through October 2015.  [AR 000707 – Doc. 15-7, p. 47] [2]  Dr. Lewis's session notes from 2007 through October of 2015 relate Shimomura had worked with those symptoms as NeoFocal's CEO, the same job he held in and after August 2016.  [AR 000680-696; AR 000710-715 – Doc. 15-7, pp. 20-36; pp. 50-55]

Dr. Lewis's session notes for at least a year after the accident say Shimomura described a "wide range of cognitive deficits." [AR 000697-700; AR 000702-707 – Doc. 15-7, pp. 37-40; pp. 42-47]  Dr. Lewis noted the deficits Shimomura described were more than deficits in attention and executive function.  [*Id.*]  Yet, again, there were no test results, imaging or referrals for Unum to review.

---

[2] Dr. Lewis's records refer to sessions following a mTBI in 2006 caused by a blow to the head when a pipe fell from a Home Depot display.

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · Fax (503) 222-5290

Unum conducted a complete review after it received the claim in September 2018. The initial inquiry in any benefits determination under the NeoFocal disability plan is whether the insured has proven continuous disability for, and if so beyond, 90 days after the claimed onset. The policy has a 90-day Elimination Period.  [AR 000091 – Doc. 15-1, p. 91]  The Elimination Period is "a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum."  [AR 000105 – Doc. 15-2, p. 8]  The relevant time here was the 90-day period beginning August 9, 2016, and then continuing on and after November 7, 2016. Unum had to determine whether the evidence provided sufficient proof that Shimomura was unable to perform the material and substantial duties of his occupation as a CEO (not at NeoFocal, but as the job is performed in the national economy) due to restrictions and limitations caused by the closed head injury.  [AR 000108 – Doc. 15-2, p. 11]  If so, did the evidence show continuous disability during and beyond the elimination period.

In the review on appeal, Unum posed three questions for review and response by its medical expert:

1.    Is the available medical evidence sufficient to determine whether Shimomura was unable to perform the material duties of his occupation as a CEO from August 7 [sic], 2016 to December 10, 2016 or beyond to a reasonable degree of medical certainty ?

2.    If the information is not sufficient, and had the claim been filed within the policy's one-year deadline, would additional information been requested/available, or would additional actions been taken to determine Shimomura's work capacity ? and

3.    Would a current IME provide sufficient information to determine restrictions and limitations as [sic] August 9, 2016 to December 10, 2016 ?

[AR 001046 – Doc. 15-11, p. 8]

Unum referred the file and these questions to Dr. Jacqueline Crawford.  [AR 001044-1046 – Doc. 15-11, pp. 6- 8]  Dr. Crawford is a licensed medical doctor board certified in Neurology, Neuromuscular and Electrodiagnostic Medicine.    [AR 001049 – Doc. 15-11, p. 11] That certification is conferred by the same medical board that confers board certification in

KILMER, VOORHEES & LAURICK,P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

psychiatry, Dr. Lewis's specialty.    *See*,  www.abms.org/board/american-board-of-psychiatry-neurology.

Dr. Crawford prepared a report following her review confirming she "completed a full review of the medical record, including prior clinical and medical reviews . . . performed [her] own independent analysis of the medical records and formed [her] own opinions." [AR 001046-1049 – Doc. 15-11, pp. 8-11]  Dr. Crawford's opinion took into account Shimomura's description of his symptoms recorded by Dr. Lewis, including those outlined above.  Dr. Crawford also took into account the fact that Dr. Lewis's notes had no mental status exams, no neurological testing, no recorded observations of impaired behavior, no CT scans, MRI imaging or brain imaging studies any time after the accident, no referrals to or input from any other healthcare providers, no independent examinations and no notes of input from anyone else.

Dr. Crawford answered Unum's first question with a "no."  In her opinion, "the sum of the data are insufficient to show within a reasonable degree of medical certainty that the insured was impaired from the vocational demands listed above for the period 8/9/16-12/10/16 and beyond." [AR 001047 – Doc. 15-11, p. 9]  Dr. Crawford supported her opinion with a list of factors that were relevant to the answer given her education, experience, and training that Shimomura's actions and the type or absence of medical treatment were not consistent with a person suffering persistent cognitively disabling symptoms.  Dr. Crawford found that after the accident Shimomura took steps "consistent with preserved consciousness, anterograde and retrograde memory, problem-solving and visuospatial skills."  [AR 001048; AR 000294-297 (accident report) – Doc. 15-11, p. 10; Doc. 15-3, pp. 139-142]  The ER doctor that day did not list concussion or traumatic brain injury among the diagnoses and did not find a CT scan of the brain necessary based on Shimomura's condition.  [AR 000279-293 – Doc. 15-2, pp. 124-138]  Shimomura did not follow the ER doctor's advice to see a primary care physician for his symptoms within 5 days.  He ignored Dr. Lewis's recommendation to delay a planned trip to Hong Kong.  [AR 000708-709 – Doc. 15-7, pp. 48-49] He managed all aspects of international travel at a time when, in Dr. Crawford's opinion, "concussion symptoms would have been anticipated to be maximal."  There was no record he had

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

assistance or sought medical attention during the trip.  [AR 001046-1049 (Dr. Crawford's report) – Doc. 15-11, pp. 8-11]

Dr. Crawford noted that Shimomura "Functioned in the vocational setting for many years despite similar complaints noted for many years by" Dr. Lewis."  [AR 001048 – Doc. 15-11, p. 10] Dr. Crawford cited Dr. Lewis's notes from the October 12, 2015 session.  The October 12, 2015 note is the last before the August 2016 car accident. Dr. Lewis again records no observations he may have made of Shimomura's cognitive abilities and no change to treatment of medication recommendations. He concludes that Shimomura's cognitive limitations remain unchanged:

> "**IMPRESSION:** TBI (traumatic brain injury), with subsequent mood instability, disrupted sleep, and a wide range of cognitive deficits, including substantial difficulty with attention and executive function. . . . Stress vulnerability continues, with notable susceptibility to social stress. Impaired executive function continues."

[AR 000709 – Doc. 15-7, p. 49]  In the September 16, 2016 note from the first session after the car accident, Dr. Lewis states Shimomura experienced a "resumption of symptoms."  There is no record that Shimomura's claimed mTBI symptoms ever stopped between 2007 and August 2016. Dr. Lewis does not make any recommendation to increase the frequency or level of treatment for the symptoms after August 9, 2016.  (Dr. Lewis uses the phrase "resumption of former symptoms" throughout his notes in recording Shimomura's self-report. *See, e.g.*, AR 000824 – Doc. 15-8, p. 65.)

Dr. Crawford found there had been no scans, imaging or tests to assess Shimomura's cognitive function or possible causes for the symptoms.  She found no observations by Dr. Lewis or anyone of cognitive dysfunction.  Dr. Crawford rendered the opinion that in patients whose symptoms rose to the level of impairment beyond a few weeks "a referral for MRI or neurological evaluation to rule out structural causes such as delayed cerebral edema, ischemia, hydrocephalus, or subdural hematoma would be anticipated."  [AR 001057 – Doc. 15-11, p. 19]  Dr. Crawford continued: "The file does not contain a systematic search for alternative explanations of reported impairing symptoms by referral for laboratory studies, sleep studies, or concussion clinic as would be anticipated if symptoms rose to the level of impairment."  [*Id.*]

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

Dr. Crawford also referred to Shimomura's reports of headaches.  [AR 001049 – Doc. 15-11, p. 11]  They were noted in Dr. Lewis's notes for at least the first five months after the car accident and Shimomura described them as frequent and at times severe.  Shimomura said the headaches caused visual artifacts that prevented him from driving.  [AR 000705 – Doc. 15-7, p. 45]  Despite those descriptions, Dr. Lewis's letter to Unum made clear he "never contended that Mr. Shimomura is disabled  . . . on the basis of headache severity."  [AR 001049 – Doc. 15-11, p. 11]  That statement by Dr. Lewis was made for the first time in 2019 and in response to Dr. Crawford's analysis. Dr. Lewis's statement is a rationalization for not obtaining tests or referrals during those two years to check his assumptions and to rule out potential organic causes as Dr. Crawford noted.  It also makes clear Dr. Lewis did not believe Shimomura's description of frequent debilitating headaches were as severe as Shimomura claimed.

Dr. Crawford answered Unum's second question with a "yes."  In her opinion, additional actions would have been taken if the claim had been filed timely, where timely was defined as the one-year period between August 9, 2016, the date of accident, and August 9, 2017, the deadline for filing proof of loss.  Among the actions Dr. Crawford identified was a timely neurological or neuropsychological IME. [AR 001047 – Doc. 15-11, p. 9]  In Dr. Crawford's opinion, those steps were necessary to determine Shimomura's work capacity in and after the 90-day elimination period following the accident in August 2016.

In response to Unum's third questions, Dr. Crawford stated that in her opinion "a current IME would not be time-relevant to 8/9/16 – 12/10/16."  Dr. Crawford explained, "The natural history of mTBI is for maximal symptoms in the hours and days after the injury with gradual improvements over weeks to months, with the grand majority of individuals resolving to baseline within three months.  Thus, an evaluation nearly three years after the index event would not reflect the insured's status as of 8/9/16 – 12/10/16."  [*Id.*]

In summary, Unum sought the opinion of a board certified medical doctor.  The doctor reviewed the records and found:

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

1.    "The sum of the data are insufficient to show within a reasonable degree of medical certainty that the insured was impaired from the vocational demands listed above for the period 8/9/16-12/10/16 and beyond.  [AR 001047 – Doc. 15-11, p. 9]

   a.   Shimomura disputes that conclusion and relies on Dr. Lewis's opinion for his claim.  [AR 001089 – Doc. 15-11, p. 51]

2.    If the claim was filed within the policy's one-year deadline, testing would have been requested as part of the process of determining work capacity in and after the 90-day elimination period required a neurological or neuropsychological IME.  [AR 001047 – Doc. 15-11, p. 9]

   a.   Shimomura disputes that conclusion with Dr. Lewis's opinion that such testing **would not be useful to him** in assessing work capacity.  [AR 000890-891; AR 001027 – Doc. 15-9, pp. 42-43; Doc. 15-10, p. 93]  There is nothing in Dr. Lewis's records suggesting that he considered such testing before Shimomura filed his claim.  Having done no testing in over two years after the accident, Dr. Lewis first expressed this opinion after Unum denied the claim.  Dr. Lewis also offered medical literature in the form of VA/DOD Guidelines to support his opinion that such testing is not recommended for the diagnosis or management of mTBI.  [AR 001026-1027 – Doc. 15-10, pp. 92-93]  That literature makes no reference to how work capacity or disability determinations are made following mTBI.

3.    An IME in 2019 would not yield relevant information on Shimomura's work capacity as of 8/9/16 – 12/10/16.  Unum did not receive Shimomura's medical records until February 23, 2019.  Shimomura claimed disability began on August 9, 2016.  The policy requires continuous disability during and beyond 90 days before benefits are payable.

   a.   Shimomura disputes this third conclusion on the same grounds he disputes the second conclusion.

   b.   Shimomura also contends Dr. Crawford's opinion that testing is necessary is refuted by Dr. Lewis's opinion that testing would not be useful in determining work capacity in this case.

   c.   Shimomura also contends Dr. Crawford did not support her opinion that testing in 2019 would not yield information useful to determining work capacity in 2016.

## V.    PROOF OF DISABILITY

### A.    Unum Finds the Proof Offered to be Insufficient to Establish the Claim.

Unum reviewed all of the evidence and determined that it was insufficient to support

Shimomura's claim that he was unable to perform the material duties of his occupation as a CEO

KILMER, VOORHEES & LAURICK,P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

as of August 9, 2016.  [AR 001111 – Doc. 15-12, p. 2]  Shimomura's own reports of his cognitive activities immediately following the accident were not consistent with the presence of disabling symptoms from a head injury.  [*Id*.]  The lack of reference to a head injury or possible head injury following examination in the emergency room after the accident was inconsistent with the presence of symptoms caused by an acute, debilitating, head injury.  [*Id*.]

Shimomura's decision not to comply with a doctor's recommendation to follow up with a physician and his decision to travel abroad against his doctor's advice were inconsistent with the presence of symptoms caused by a debilitating head injury.  [*Id*.]  The completion of travel abroad days after the accident without any indication of assistance or medical treatment during that trip and in the month following the accident was inconsistent with the presence of symptoms caused by a debilitating head injury.  [AR 001112 – Doc. 15-12, p. 3]

Unum's Dr. Crawford found the absence of an MRI or neurological evaluation in a patient reporting the symptoms Shimomura described in session notes with Dr. Lewis, for a period of more than two years was inconsistent with the presence of symptoms caused by a debilitating head injury.  [*Id*.]  The fact that Dr. Lewis ordered an MRI in 2012 for the 2006 injury and he did not order one after the 2016 accident, but he tried to justify that decision only after the fact, weighs against a finding of disabling symptoms.  The absence of tests to rule out possible structural causes for claimed disabling symptoms lasting more than two years was inconsistent with the presence of persistent symptoms caused by a debilitating head injury.  [*Id*.]

The fact that Shimomura reported headaches caused by the accident, with a severity that required medication and that interfered with driving raised concern but his doctor denied they were a contributing cause to the symptoms caused by a debilitating head injury was inconsistent with the claim.  [*Id*.]  That denial, too, was an after the fact rationalization for not obtaining imaging studies.  The reasonable conclusion is that Dr. Lewis believed Shimomura's description of his symptoms in and after 2016 did not warrant imaging studies like the one ordered in 2012.

The fact that Shimomura's reported symptoms of impaired executive function predated the accident and had existed since as early as 2006 or 2007, and that Shimomura worked full-time

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

with those symptoms was inconsistent with the presence of symptoms caused by a debilitating head injury. [*Id.*] The continuation of medications taken well prior to the accident, while Shimomura was working full-time, and that continued after the accident was inconsistent with the presence of symptoms caused by a debilitating head injury. [*Id.*]

Unum supported its denial and the decision to uphold the denial on appeal with the opinions of qualified medical consultants and a review of all the evidence by the consultants and by Unum's claims specialists. As explained next, Dr. Lewis's opinions are internally inconsistent and unreliable.

**B.      Dr. Lewis's Opinions Were Based on Conflicting and Contradictory Facts.**

Dr. Lewis wrote three letters in support of disability after Shimomura filed his claim. The opinions and supporting analysis in the letters he wrote in 2019 deviate substantially from the information in his contemporaneous notes from sessions with Shimomura. In these letters written well after the fact, Dr. Lewis rationalizes why his contemporaneous notes have no mental status exams, no neurological testing, no recorded observations of impaired behavior (except as noted in the first session), no CT scans, MRI imaging or brain imaging studies any time after the accident, no referrals to or input from any other healthcare providers, no independent examinations and no notes of input from anyone else. In the notes, as well as the three letters, there is no mention that these measures were even considered during the two years after the accident. Dr. Lewis defended his reliance solely on Shimomura's self-described symptoms and his self-reports of their impact on his work performance with his opinion that Shimomura was credible, that he was not exaggerating and that he did not over-report his symptoms or their severity. [*See, e.g.,* AR 001089 – Doc. 15-11, p. 51] Dr. Lewis based that opinion solely on his sessions with Shimomura going back to 2007.

Dr. Lewis began his defense of the absence of brain imaging studies in his records by assuming that Shimomura sustained damage to his brain that was too small to see with a CT scan or an MRI. [AR 001088 – Doc. 15-11, p. 50] That conclusion is not anywhere his notes. It was expressed solely to disagree with Unum's physicians' opinions more than two years into his

post-accident sessions with Shimomura. Dr. Lewis did not deny or disagree that imaging and testing were appropriate to detect or rule out causes that you can see in imaging studies. Dr. Lewis just assumed Shimomura's brain injury was at the "cellular and axonal level, a microscopic scale not visualized by the current resolution capabilities of CT or typical MRI." [*Id.*] He also assumed there was no need to run tests to see if his assumption was accurate. So, without any of the testing Dr. Crawford said was necessary to rule out various conditions and causes and to make a disability determination, Dr. Lewis declared that Shimomura was disabled by injury at a microscopic level. While that may be true, it is an assumption based on Shimomura's description of the car accident and Dr. Lewis never explained why he deviated from his normal practice or why he did not consider testing to see if there were other organic causes for the symptoms Shimomura described. It is reasonable to conclude that before 2019 when he began defending the absence of testing Dr. Lewis did not believe Shimomura's symptoms were as serious as he described.

Dr. Lewis's defense for the lack of testing or imaging to rule out structural causes is contradicted by his prior work with Shimomura. Dr. Lewis had in his records an MRI report on Shimomura's brain that he ordered on November 1, 2012 and that was done on December 14, 2012. [AR 000680-682 – Doc. 15-7, pp. 20-22] Dr. Lewis ordered the 2012 MRI "to assess WM [white matter] integrity and assess for evidence of DAI" after a pipe hit Shimomura in the head in 2006 and he reported symptoms consistent with a mTBI. [*Id.*] The 2012 MRI did show changes consistent with a head injury, correlated to the 2006 incident. We don't know why Dr. Lewis did not to get a study for comparison after the August 2016 accident because his notes are silent on the issue. Instead, he offered assumptions, made after the fact, with no evidence that he considered brain imaging while he was seeing Shimomura to justify the absence of imaging studies for Unum's review. Dr. Lewis's after-the-fact rationalization undermines his credibility.

As explained in the next section, Dr. Lewis's defense for the lack of any reference to testing also lacks credibility. It is a rationalization offered after more than two years of treatment, and after the claim was denied. It is an opinion based on the assumption that Dr. Lewis need not test for the slight cognitive "decrements" that he believed caused Shimomura to be unable to perform

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

the material and substantial duties of his occupation.  Regardless of whether that can be supported, it does not explain why Dr. Lewis neither sought nor obtained testing of any kind despite the notes from his sessions that Shimomura described disabling cognitive symptoms that persisted for more than two years.  It is reasonable to conclude Dr. Lewis did not believe Shimomura's symptoms were as serious as what Shimomura described.

Dr. Lewis never contended that Shimomura had only "decrements" in executive functioning until after the claim was made and he wrote letter to support the claim.  Dr. Lewis always described Shimomura as reporting "a wide range of cognitive deficits, ***including*** substantial difficulty with attention and executive function."  Dr. Lewis used that phrase to describe his impression at least as early as August 15, 2007 [AR 000692 – Doc. 15-7, p. 32] and continuing in every session note after that, through at least January 28, 2019.  [AR 000813 – Doc. 15-8, p. 54]  That includes the last visit before the August 2016 car accident – October 12, 2015.  [AR 000709 – Doc. 15-7, p. 49]  So, in practice he found no need for testing despite characterizations Shimomura's explanations as depicting "a wide range of cognitive deficits." In defense he rationalized the lack of testing with his unsupported and untested finding that the symptoms were so subtle.  And it is important to note that Dr. Lewis never explained how Shimomura worked as NeoFocal's CEO with that same "wide range of cognitive deficits" from 2007 through October 2015, but was somehow disabled by them on August 9, 2016.

Dr. Lewis's repeated reference over the years to symptoms beyond executive function uses terms that Dr. Lewis himself said describe much more than "decrements."  Dr. Lewis explained that he used the term "executive function" to describe a combination of "pronounced impairment of his working memory, his ability to focus and concentrate, and to interact effectively with others."  [AR 001089 – Doc. 15-11, p. 51]  So again, it is only in rationalizing after the fact that Dr. Lewis contends what he calls "profound" impairments in executive function are too subtle for neurocognitive testing.  Dr. Lewis contends that neurocognitive testing offers no useful information for a patient with those profound impairments and who also has a wide range of cognitive defects. Had there been anything in his contemporaneous notes to explain why Dr. Lewis

KILMER, VOORHEES, LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

conducted no testing and sought no referrals, given the symptoms and work performance Shimomura described, his opinion on testing might be credible. On these facts, it is not. Dr. Lewis's opinions before and after Unum challenged them are inconsistent and undermine Dr. Lewis's credibility and his opinion in support of disability.

A review of Dr. Lewis's notes reveals descriptions he attributes to Shimomura of severe cognitive dysfunction. Yet, despite the severity of what Shimomura described, Dr. Lewis sought no imaging, testing or referrals to another health care provider. That course of treatment undermines the credibility of Dr. Lewis's opinion in support of disability. It also provides evidence that Dr. Lewis did not believe Shimomura's symptoms impacted his work performance or his daily activities to the extent Shimomura claimed and were not nearly as severe as Shimomura claimed.

For example, in the first visit with Dr. Lewis after the car accident–September 16, 2016– Shimomura said he had difficulty putting on clothes correctly, like putting on a shirt inside out or backwards. [AR 000708 – Doc. 15-7, p. 48] He reported problems with suddenly feeling hot or cold, with teeth chattering. He said he had transient vertigo and tinnitus and trouble expressing himself clearly. [*Id.*] He said he had hip and neck pain from the accident and pain in his chest while walking. [*Id.*] He said he had low appetite with weight loss, he was fatigued and situations with social contact were much more draining. [*Id.*] Shimomura said he can't tell from moment to moment if he is being attentive or not. [*Id.*] He forgot then remembered a story he tried to tell and he had to return 10 minutes after leaving because he left his briefcase behind. [*Id.*] Shimomura reported migraines on and off. [AR 000707 – Doc. 15-7, p. 47] It was Dr. Lewis's impression that Shimomura had a "wide range of cognitive deficits" not limited to attention and executive function. [*Id.*]

Dr. Lewis's January 31, 2017 note is from a session more than 5 months after the accident. He said Shimomura told him he loses things on every trip he takes, he has difficulty completing tasks and when he switches from task to task "the previous task is forgotten." [AR 000705 – Doc. 15-7, p. 45] Shimomura said he was having migraines that make him feel "stupid." [*Id.*] He said medication is effective but he can't drive due to visual artifacts. [*Id.*] He said he has

KILMER, VOORHEES & LAURICK,P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

problems with motion sickness.  [*Id.*]    A month later Shimomura told Dr. Lewis he felt overwhelmed, exhausted, wanting to sleep all day, not able to engage and at some point slept 16-20 hours per day.  [AR 000704 – Doc. 15-7, p. 44]

Nine months after the accident Dr. Lewis said Shimomura told him, "I think I'm improving" and "I feel like I'm recovering." [AR 000702 – Doc. 15-7, p. 42]  But the notes include an email from Shimomura to Dr. Lewis a week later saying "the stress level was transferring to doing non-work projects (including ADL, but really stuff I should enjoy more), and I was having a hard time making decisions, executive functioning, socializing, and all that."  [AR 000701 – Doc. 15-7, p. 41]  The term "ADL" is often used in assessments of ability to refer to activities of daily living.

A month later, Dr. Lewis said Shimomura told him that he experienced "First Memorial Day weekend in 20 years when he didn't plan something recreational – because he was feeling stressed and de-focused."  [AR 000700 – Doc. 15-7, p. 40]  Now, ten months after the accident, Dr. Lewis continued to make a note after every session to this point that Shimomura had "a wide range of cognitive problems."  [*Id.*]

In July 2017, Shimomura told Dr. Lewis he "has had more migraines" and was going through a box of rescue medication a week.  [AR 000699 – Doc. 15-7, p. 39]  Thirteen months after the accident, and a month after the deadline to file a claim with Unum, Dr. Lewis said Shimomura had been "pretty challenged over the past few months" and told him he planned to go on a trip, but he couldn't organize himself in a satisfactory way and was feeling overwhelmed. [AR 000178 – Doc. 15-3, p. 23]

Dr. Lewis's opinion that Shimomura was disabled by subtle cognitive "decrements" is inconsistent with these and other comments Shimomura used to describe his symptoms and his behavior.  After the August 2016 car accident, Dr. Lewis continued to see Shimomura in regular sessions for the resumption of symptoms Shimomura had been reporting, and working full-time with, since 2007.  There was no change in treatment.  The record in Dr. Lewis's contemporaneous notes contradicts his later rationalizations and diminishes the weight accorded to his opinion.

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

Dr. Lewis's opinion that Shimomura's injury was not detectable through imaging, and his cognitive symptoms too subtle to test, was an after-the-fact rationalization for a very benign course of treatment.  His opinion after the fact that the impairments were relatively minor and limited to issues with executive function is contradicted by his own contemporaneous notes.  Those inconsistencies and contradictions erode Dr. Lewis's credibility and substantially decrease the weight to be given his opinion in support of disability.

## C.    Testing.

Unum submitted evidence that, in the opinion of a neurological medical expert consulting on a disability determination, neurocognitive testing would have been requested as part of the claim investigation.   Unum's benefits specialist and appeals specialist reached the same conclusion.

Shimomura's rebuttal is Dr. Lewis's opinion that neurocognitive testing would not be useful *to him* in this case. [3]  Dr. Lewis speculates, "If an event like a mTBI reduced his executive functioning by 20% for instance, he might still be in the normal range as assessed by cognitive testing, and he might still be unable to perform adequately in a work position that routinely demands executive function capacity that is not merely normal but superlative." [AR 0000890-891 – Doc. 15-9, pp. 42-43]  Dr. Lewis's rationale might be appropriate to contest an opinion as to the meaning of test findings in a disability determination.  But what cannot be dismissed is that Dr. Lewis concedes neurocognitive testing can detect abnormal cognitive function attributed to a mTBI.  That contradicts his attempt to discredit Unum's medical experts' opinions that testing was necessary to an investigation into work capacity and disability.

To the extent Dr. Lewis's opinion can be read to state that testing would not be useful in a work capacity investigation, it is not persuasive because it lacks foundation.  The opinion rests on Dr. Lewis's conclusion that Shimomura can be precluded from effectively performing his job by

---

[3] His opinion that testing is not necessary or recommended for the *diagnosis or management* of mTBI has no bearing on the issue of whether testing is useful in disability determination.  Unum set out a detailed analysis in earlier briefing showing that the VA/DOD Guidelines do not address disability determinations.  [*See*, Doc. 25, pp. 14-16]

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

a slight impairment and an impairment that slight is not detectable through testing. [AR 000888-889; AR 000895 – Doc. 15-9, pp. 40-41; p. 47]  That conclusion is not supported.

First, Dr. Lewis does not know what neurocognitive testing – or any testing – would have revealed because he didn't try.  Second, Dr. Lewis did concede testing "might" show whether Shimomura's executive function is below average.  [AR 000890 – Doc. 15-9, p. 42]  That does not contradict Dr. Crawford.  Third, Dr. Lewis did not contradict Dr. Crawford's opinion that testing would have been ordered in a disability assessment to assess work capacity in and beyond the elimination period. [4]  Fourth, Dr. Lewis did not say that if the claim were filed timely testing would not yield information relevant to assess work capacity in and beyond the elimination period. So, while Dr. Lewis asserted testing would not be useful to him in this case, he did not rebut Dr. Crawford's opinion that testing would have been requested for the disability determination. Dr. Crawford's opinion that a neurological or neuropsychological IME would have been required as part of the disability determination is unrefuted.

Dr. Lewis relies on his opinion, made for the first time after the claim was denied, that the only relevant evidence for work capacity that could ever be developed or obtained is Shimomura's description of his symptoms, that the symptoms are consistent with a mTBI and Shimomura's description of how the symptoms affect his work performance.  That opinion is a rationalization after the fact and is contested by Dr. Crawford's opinion that testing was warranted, would be anticipated if the reported persisted symptoms were actually present, and would have been requested.  Moreover, Dr. Lewis's own course of conduct casts doubt over whether he believed Shimomura's description of the severity of his symptoms.

Shimomura offers a second argument against testing that is unsupported and unpersuasive. Shimomura contends he could have filed his claim in August 2017 and Unum has not proven testing in or after August 2017 would yield useful information on work capacity in August through December 10, 2016.  Unum does not have that burden.

---

[4] The policy states Unum may require an IME as part of the information needed as proof of claim. [AR 000080-81 – Doc. 15-1, pp. 80-81]

Kilmer, Voorhees & Laurick, P.C.
A Professional Corporation
2701 NW Vaughn Street, Suite 780
Portland, Oregon 97210
(503) 224-0055 · Fax (503) 222-5290

Dr. Crawford's opinion as a neurologist stands uncontested - if the claim had been filed within a year, testing would be requested as part of a determination of disability. It would be one thing if Shimomura had testing to offer at any time before he filed the claim. But he does not. No testing was done, so no one knows what testing would have shown.

Dr. Crawford's opinion was made in the context of the evidence in this case. No imaging studies. No testing. No referrals. No observations of cognitively dysfunctional behavior. On those facts, according to Dr. Crawford, testing would have been requested. Unum does not have to prove testing would have supported a denial. Only that there is evidence that testing would have been requested. Dr. Lewis agrees that neurological testing can detect cognitive dysfunction resulting from symptoms of a mTBI. So there is no evidence that testing is not relevant to a disability determination.

Dr. Crawford did make the observation that symptoms in the majority of patients are resolved in the first weeks or months. That does not contradict her opinion that work capacity testing would have been requested if the claim was filed timely. Dr. Crawford's opinion that testing in 2019 – 30 months after the accident and 18 months after the claim deadline – would not be useful in this case. Dr. Crawford said testing would be requested as part of a disability investigation.

Dr. Lewis is silent on this issue. D. Lewis said only that testing would never be relevant in this case. Dr. Crawford's opinion is not contested.

**D.    An IME After the Claim was Filed.**

Dr. Crawford provided the opinion that an IME in 2019 would not yield relevant information on Shimomura's work capacity as of 8/9/16 – 12/10/16. As stated, Unum did not receive Shimomura's medical records until February 23, 2019. Shimomura claimed disability began August 9, 2016. The policy requires continuous disability during and beyond 90 days before benefits are payable.

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

Dr. Crawford's opinion is based on her education, training and experience as a medical doctor board certified in neurology. Her opinion is unrefuted. Dr. Lewis said only that no testing was required. Dr. Lewis did not weigh in on the efficacy of testing 18 or 30 months after the fact.

Unum's decision to deny the claim for late notice on these facts is correct. Unum's decision to deny the claim for insufficient proof of disability on these facts is correct. Either and both compel judgment for Unum. The Magistrate's recommendation to the contrary is based on erroneous findings and should not be adopted.

## VI.    <u>OBJECTIONS</u>

### A.    **The Magistrate Erred in Finding Unum Did Not Prove Prejudice From the 25-Month Delay.**

Timely notice in ERISA litigation is governed by state law. *See*, *Cisneros v. UNUM Life Ins. Co. of Am.*, 134 F.3d 939, 947 (9th Cir. 1998) (holding that state law notice-prejudice rule applies and declining to adopt a federal common law rule under ERISA). Oregon is the governing jurisdiction for the Plan, the suit was filed here, and the sponsor is sited here. [AR 000047; AR 000076 – Doc. 15-1 p. 47; p. 76] Timely notice is a condition of coverage in Oregon. *Smagala v. Sequoia Ins. Co.*, 969 F.Supp.2d 1271, 1281 (D. Or. 2013) ("Oregon courts have held a policyholder bears the burden to establish conditions affording coverage, including the burden to show he provided timely notice of damage.").

Shimomura did not provide timely notice. Whether the claim is covered turns on a two-part inquiry. "[T]he first inquiry should be whether the notice of accident was received in time for the insurer to make a reasonable investigation and adequately protect its interest and that of the insured." *Lusch v. Aetna Cas. & Sur. Co.*, 272 Or. 593, 599 (1975). "[I]f the insurer could not adequately investigate or otherwise protect itself, thereby suffering prejudice, then the relevant inquiry is whether the insured acted reasonably in failing to give notice at an earlier time. If the insured did act reasonably, the insurer is obligated to perform." *Id*.

As shown, Unum's expert neurologist determined that on the context of this file, neurological testing would have been requested if the claim were timely filed. No relevant data

KILMER, VOORHEES & LAURICK,P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

could be obtained from an IME after the claim was filed in 2018.  That opinion was relied on by Unum in the denial and is not contested.

**B.    The Magistrate Erred in Finding that Unum's Determination of the "Time Relevant" Period was "A Moving Target."  [F&R, pp. 35-36]**

Unum determined that there was one time relevant period for determining whether Shimomura proved disability through and beyond the 90-day Elimination Period.  That period was August 9, 2016, when Shimomura claimed disability began, and December 10, 2016, about a month after the end of the Elimination Period.  [AR 001046 (questions 1 and 3) – Doc. 15-11, p. 8] Unum determined there was a second time relevant period to comply with the one-year deadline for submitting proof of loss.  That period was August 9, 2016 to August 9, 2017.  [*Id*. (question 2)] The Magistrate did not take into account that no benefits were payable unless Shimomura proved continuous disability for the duration of the elimination period and beyond.

**C.    The Magistrate Erred in Finding Unum Did Not Make this Distinction in its Determination.  [F&R, p. 35]**

Unum quoted from the policy in the initial denial letter [AR 000962-968 – Doc. 15-10, pp. 28-34] and the letter upholding the denial on appeal, explained the decision was based on the entire policy, and disclosed that it has the right to enforce policy provisions not quoted in the letter. [AR 001107-1116 – Doc. 15-11, pp. 69 – Doc. 15-12, p. 7] [5]  Proof of claim must show the date disability began.  Proof of claim must show when the disability began and that sickness or injury causes limitations on functioning and restrictions on activities that prevent performing the material and substantial occupational duties.  Disabled means limited from performing the material and substantial duties of your regular occupation due to sickness or injury.  Limited "means what you cannot or are unable to do."  [AR 000106 – Doc. 15-2, p. 9]  Benefits are not payable until the

---

[5] Courts apply state law contract principles to interpret ERISA plans.  *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007).  Oregon law imposes a duty on the insured to read the contract. *Knappenberger v. Cascade Ins. Co.*, 259 Or. 392, 398, 487 P.2d 80, 83 (1971).  Shimomura was the founder, CEO, and 29% shareholder of NeoFocal. [AR 000047 (Employer Statement, §§ C, D) – Doc. 15-1, p. 47] His company bought the policy effective August 1, 2016, eight days before the accident and claimed date of disability.  [*Id*. at § B]

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

elimination period has been met and disability continues beyond the elimination period. [AR 000091 – Doc. 15-1, p. 91]  The Elimination Period is "a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum."  [AR 000105 – Doc. 15-2, p. 8]  So the initial inquiry in any benefits determination under the NeoFocal Plan is whether the insured has proven continuous disability for, and if so beyond, 90 days after the claimed onset.

        Unum's initial denial letter and Dr. Crawford's review on appeal communicate that if the file were reviewed between the disability date and the deadline for submitting proof, Unum likely would have sought neuropsychological testing in order to determine Shimomura's functional capacity.  [AR 000964; AR 001047 – Doc. 15-10, p. 30; Doc. 15-11, p. 9]  Both advised an IME or testing in 2019 would not determine Shimomura's functional capacity starting from August 9, 2016.  [*Id*.]  Both advised that the relevant time frame for determining functional capacity for proof of disability was from August 9, 2016 forward.  [*Id*.]  The initial denial letter identified the period for submitting proof of loss on page 5 of 7, including the requirement that "you must send Unum proof of your claim no later than one year after the date your disability begins unless your failure to do so is due to your lack of legal capacity."  [AR 000966 – Doc. 15-10, p. 32]  Unum's letter upholding the denial on appeal also included that information.  [AR 001111 – Doc. 15-12, p. 2]

**D.      The Magistrate's Finding That "it could take at least several months for anyone to know if an mTBI event has resulted in symptoms that persisted beyond the typical timeframe for recovery . . ." is Not Relevant to the Court's Determination that Unum was Prejudiced by the Delayed Filing.  [F&R, p. 29]**

        Dr. Lewis's records make clear Shimomura described symptoms that he said impacted his work performance as early as the first visit in September 2016.  [AR 000707-708 – Doc. 15-7, pp. 47-48]  Shimomura's self-report in his email days after the accident make clear he reported what he claimed were disabling symptoms almost immediately.  And this litigation is based on Shimomura's claim and Dr. Lewis's opinion that Shimomura was disabled continuously on and after August 9, 2016.  The Magistrate's reference to a disability manifesting after the first three months is irrelevant to the disability determination here.

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

Dr. Lewis noted Shimomura said his symptoms affected his work performance to the point he had to go on leave from work.  [*Id.*]  There is no evidence that in August through December 2016 Shimomura was not aware of his claimed restrictions and limitations he relied on for his claim when he filed in 2018.  The Magistrate erred in finding Unum could obtain time-relevant testing and evaluation in 2019 for work capacity on August 9, 2016 through December 10, 2016.  There is no evidence to support that finding.  The evidence that an IME in 2019 could not provide time-relevant testing and evaluation in 2019 for work capacity on August 9, 2016 through December 10, 2016 is unrefuted on this record.

**E.    The Magistrate Erred in Finding Shimomura's Allegations He Sustained a Closed Head Injury in the Accident, and Generalized Findings on Imaging Studies Conflicts With or Diminishes Unum's Conclusion that Late Filing Left it With No Means to Independently Assess Shimomura's Cognition.  [F&R, pp. 30-31]**

It is well settled that a diagnosis is not proof of disability.  *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004) ("That a person has a true medical diagnosis does not by itself establish disability."), *overruled on other grounds as recognized by Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673-74 (9th Cir. 2011).  Again, there is no evidence on this record that contradicts the opinions of Unum's medical expert that it was prejudiced by the inability to assess Shimomura's cognition.

**F.    The Magistrate Erred in Finding Shimomura Proved His Claim.**

> **1.    The Magistrate erred in finding Dr. Crawford did not address Dr. Lewis's opinions and "the authorities Dr. Lewis relied on."  [F&R, p. 32]**

As stated above, the VA Guidelines and the Ontario Neurotrauma Foundation Guidelines address generally the diagnosis and management of mTBI.  They do not address the assessment of cognitive function or work capacity that may result from mTBI.  The Magistrate did not identify where Dr. Crawford challenged Dr. Lewis's diagnosis or management of Shimomura's self-reported symptoms.  The Magistrate erred in finding that Dr. Crawford did not explain why an MRI or other diagnostic imaging is typical in her experience.  The descriptions of symptoms and limitations in Dr. Lewi's notes are discussed above.  Dr. Crawford's full quote is also set out above with her reason based on medical experience and training.  Again, not only did Dr. Lewis

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

find an MRI to be typical for assessment in 2012, his only criticism here is based on his untested assumption that Shimomura's brain injury occurred at a microscopic level, even though the earlier brain injury left artifacts visible on MRI.

**2. The Magistrate's generalized comments on proof of claim are not relevant to the Court's determination on prejudice.  [F&R, p. 33]**

As noted, there is no indication Shimomura's claim rests on a delayed onset or diagnosis.

**3. The Magistrate's finding describing in hypothetical terms all the information Unum might have found does not address the unrefuted fact that Unum was prejudiced by a lack of testing.  [F&R, p. 34]**

The references to a "three- or four-month window for recovery" throughout the F&R are not relevant to Unum's right to investigate whether Shimomura was disabled through and beyond the 90-day elimination period.  [*See, e.g.,* F&R p. 34]

**4. The Magistrate erred in finding that Unum did not prove prejudice because it did not request work emails and interview of Shimomura and interviews of co-workers in 2019.**

Shimomura was on leave from work from September 7 through December 20, 2016 and was absent from work for the week after the accident while he traveled to Hong Kong and performed no work-related activity.  Unum's decision not to ask for that evidence does not invalidate Unum's determination that testing was necessary as part of a disability investigation.

**5. The Magistrate correctly found Unum did not cite the date Shimomura's coverage ended, August 21, 2017, as a basis for denial.  [F&R, pp. 24-25]**

The reference in briefing to that date is not part of the denial, so it does not support the Magistrate's finding of a "moving target" for time relevant data.  *See*, *Collier*, 53 F.4th 1180, 1187-88.  Unum explained in its Reply that the reference the Magistrate cites in the Motion was raised in anticipation of an argument Shimomura might, but did not, make in briefing.  [Doc. 25, pp. 25-26]  There is no evidence Unum raised August 21, 2017 as a reason for denying the claim. Unum's Reply explained only that Shimomura's coverage ended that day, so the only covered disability could be one that began before that day and continued beyond that day.  Shimomura has maintained the position that his claim began August 9, 2016 and continues through at least 2019.

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

**6.** **The Magistrate erred in finding that "a determination of Plaintiff's credibility is not part of the Court's de novo review" [because] Defendant never offered Plaintiff's lack of credibility as a ground for denying his LTD claim (see Admin. R. Ex. A at 962-68, 1107-16) . . . ." [F&R, p. 37]**

The Magistrate did not provide a basis for that finding. The Magistrate cited to *Collier*, where the court found "a district court cannot adopt post-hoc rationalizations that were not presented to the claimant, including credibility-based rationalizations, during the administrative process." [F&R, p. 37]

This case is distinguished from *Collier.* There the court found, "In its trial briefs, Lincoln argued for the first time that Collier was not credible. Lincoln further argued that because Collier's doctors relied in large part on her subjective reports of pain, their conclusions were not supported and thus did not constitute objective evidence of her disability." *Collier*, 53 F.4th at 1184. The court reversed and remanded because, "Although Lincoln failed to raise the lack of objective medical evidence or Collier's lack of credibility as grounds for denying benefits, the district court relied on those rationales to conclude that Lincoln properly denied Collier's application for benefits." *Id*.

In support of the reversal, the court found Lincoln's denial letter "said nothing about Collier's credibility or the lack of objective medical evidence as grounds for denying benefits." On appeal, Lincoln stated that "the rationale for its original decision had not changed, noting that its 'position remain[ed]' that Collier did not provide sufficient proof of her disability." *Id*. The court found "Lincoln's boilerplate statement in its final denial letter that Collier did not meet the Plan's standard of 'disability' fell far short of providing 'specific reason or reasons' for denying her claim for LTD benefits as required by ERISA. 29 U.S.C. § 1133. *Id*. at 1188.

Here, Unum provided specific reasons in its letter upholding the denial on appeal, and specific examples of inconsistencies that called Shimomura's credibility into question. Shimomura's claim is based on self-reports of disabling symptoms caused by the accident and cognitive dysfunction and its effects on his work performance. Unum's letter upholding the denial on appeal includes a discussion of evidence that is not consistent with Shimomura's claim that he

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

sustained a disabling head injury and that he was unable to work due to symptoms caused by the injury. [AR 001107-1116 – Doc. 15-11, p. 69 – Doc. 15-12, p. 7] Unum provided specific examples of inconsistent behavior and reports in support of its conclusion that the evidence was insufficient to support a finding Shimomura was disabled. The analysis by Unum's medical experts also discusses those inconsistencies. The letter upholding the denial on appeal is evidence Unum found Shimomura's self-reports lack credibility and relied on the lack of credibility as one reason to find the evidence was insufficient to establish disability.

Unum's letter starts out by explaining, "Mr. Shimomura submitted his claim for Long Term Disability indicating he was limited from working on a full-time basis in his regular occupation as a CEO and Executive Director beyond August 09, 2016 due to post-concussive syndrome associated with a 2006 head injury and a motor vehicle accident on August 09, 2016." [AR 001108 – Doc. 15-11, p. 70] The initial inquiry in any benefits determination under the NeoFocal Plan is whether the insured has proven continuous disability for, and if so beyond, 90 days after the claimed onset. Shimomura would have to prove "a period of continuous disability [through and beyond the 90-day elimination period] which must be satisfied before you are eligible to receive benefits from Unum." [AR 000105 – Doc. 15-2, p. 8]

Unum's letter stated Shimomura claimed he was disabled by "persistent cognitive impairment, disrupted sleep, and neuropathic pain" that rendered him unable to perform the following occupational duties: "effective attention and memory, decisionmaking, effective interaction with colleagues and business associates." [AR 000041-42 (Employee Statement); AR 001108-1109 – Doc. 15-1, pp. 41-42; Doc. 15-11, pp. 70-71] Unum's letter explained that Unum's physician's determined Shimomura's claims of disabling symptoms were inconsistent with Shimomura's own description of what he did immediately following the accident and his treatment in the ER shortly after the accident. [AR 001109 – Doc. 15-11, p. 71]

Unum explained, "Our physician found this level of activity [immediately after the accident] to be consistent with preserved consciousness, anterograde and retrograde memory, problem-solving and visuospatial skills." [AR 001111 – Doc. 15-12, p. 2] The ER doctor that day

KILMER, VOORHEES & LAURICK,P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

did not list concussion or traumatic brain injury among the diagnoses and did not find a CT scan of the brain necessary based on Shimomura's condition.    [AR 001112 – Doc. 15-12, p. 3] Shimomura did not follow the ER doctor's advice to see a primary care physician for his symptoms within five days.  [*Id*.]  He ignored Dr. Lewis's recommendation to delay a planned trip to Hong Kong.  [*Id*.]  He managed all aspects of international travel at a time "when any accident related symptoms would be most severe."  [*Id.*]  There was no record he had assistance or sought medical attention during the trip.  [*Id.*]

Unum explained that its neurologist determined "a MRI or neurological evaluation would be expected in an individual reporting impairing symptoms beyond a few weeks of recovery to rule out possible structural causes."  [*Id.*]  Unum acknowledged MRIs in post-concussive patients may be normal, but there is no records of an MRI or neurocognitive study after the car accident. [*Id.*]  That absence is inconsistent with Shimomura's claims of persistent disabling symptoms. There is no evidence his doctor even considered those studies before the claim was file.

Unum explained that "Shimomura's reported symptoms predate his accident and had existed for many years."  [*Id.*]  Unum pointed to a session where Dr. Lewis recorded Shimomura's report that "impaired function continues."  [*Id.*]  Unum explained its finding that Shimomura and his employer reported he was "working on a full-time basis at the time."  [*Id.*]  That finding contradicts Shimomura's claim that his symptoms made him unable to work on and after August 9, 2016.

Unum explained that Shimomura's use of specific medications before the accident continued after the accident.  [*Id.*]  Unum explained that Shimomura's use of a drug not approved for use in the United States appeared to be self-directed and more consistent with an individual seeking performance enhancement as opposed to someone seeking medical treatment.  [*Id.*] Unum pointed out that Dr. Lewis confirmed Shimomura was self-directing the medication.  [*Id.*]

Unum pointed out that Shimomura was treating with drugs for narcolepsy although there was no diagnosis for narcolepsy or other conditions consistent with using the medication.  [*Id.*] Unum explained that Dr. Lewis claimed headaches were not impairing.  [*Id.*]  That contradicts

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

Shimomura's claim that his headaches were much more frequent after the accident and sever to the point where they produced visual artifacts that made it unsafe to drive.

Unum's letter explained that letters from Dr. Lewis list symptoms reported by Shimomura. [AR 001109 – Doc. 15-11, p. 71]  Dr. Lewis relied on those self-reported symptoms to diagnose persistent post-concussive syndrome and did not rely on neurologic tests, exams or brain imaging studies.  Unum's expert neurologist rendered the opinion that "MRI or neurological evaluation would be expected in an individual reporting impairing symptoms beyond a few weeks of recovery to rule out possible structural causes including cerebral edema, ischemia, hydrocephalus, or subdural hematoma.  There is no records a MRI or neurological evaluation was completed following the August 09, 2016 motor vehicle accident." [AR 001046-1049 (Dr. Crawford's report) – Doc. 15-11, pp. 8-11]

Shimomura's self-reports are the only evidence Dr. Lewis relied on for his opinion that Shimomura was disabled.  Dr. Lewis formed the opinion that the car accident caused a head injury, head injuries can cause cognitive dysfunction and Shimomura described symptoms consistent with those caused by head injuries.

The Ninth Circuit described a process like Unum's analysis here as a credibility determination in *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 905 (9th Cir. 2016). [6] However, in *Demer*, the court found no evidence the claims administrator relied on lack of credibility to deny

---

[6] An ERISA claims administrator is a fact finder in the administrative process.  The Ninth Circuit's Model Civil Jury Instruction No. 1.14 sets out the factors and process for a credibility determination and it is no different than what Unum did here:

> **1.14 Credibility of Witnesses -** In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account: . . . .**(4) the witness's interest in the outcome of the case, if any; (5) the witness's bias or prejudice, if any; (6) whether other evidence contradicted the witness's testimony; (7) the reasonableness of the witness's testimony in light of all the evidence; and (8) any other factors that bear on believability.  Sometimes a witness may say something that is not consistent with something else he or she said.** Sometimes different witnesses will give different versions . . . . **You may consider these differences,** but do not decide that testimony is untrue just because it differs from other testimony. . . . . **What is important is how believable the witnesses were, and how much weight you think their testimony deserves**. (emphasis added)

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

the claim. *Id*. at 905-06. The court held that, as a result, MetLife could not rely on a lack of credibility to support the denial in litigation. Here, by contrast, the statements in Unum's letter upholding the denial on appeal is evidence that Shimomura's lack of credibility was one basis for denying the claim.

In *Demer*, the court considered MetLife's finding that Demer's "mental functional capacity was [not] affected in any way by the medications he was taking for his physical pain." *Id*, at 904. The evidence on mental functional capacity was limited to Demer's self-report, observations by a friend, and the treating physician's opinion that the "prescribed narcotic and neurological oriented medications have known side effects" on an individual's mental functioning" and the side effects infringed on Demer's ability to concentrate and tended to diminish his energy *Id*. at 904-05. Relying on its expert's review, MetLife found the evidence did not establish the existence of disabling symptoms. *Id*. at 905. The court found: "Implicit in each doctor's opinion—and therefore MetLife's decision—was a conclusion that Mr. Demer's complaints of fatigue and difficulty concentrating were not credible." *Id*.

The court found that MetLife could not assert a lack of credibility as a basis to support the denial because it determined that in the administrative review MetLife and its experts "never explained specifically why they rejected Mr. Demer's claim of mental function limitations." *Id*. at 905-06. The court acknowledged the record contained possible grounds for questioning Demer's credibility, but that MetLife had not tied a credibility determination to those grounds. *Id*.

Unum undertook to determine whether what Shimomura said about self-reported symptoms and limitations are consistent or inconsistent with other things he said. Unum undertook to determine whether what Shimomura said is contradicted by other evidence. Unum undertook to determine the reasonableness of what he said in light of all of the evidence and any other factors that bear on believability. That is a credibility determination.

KILMER, VOORHEES & LAURICK,P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

## VII.    <u>CONCLUSION</u>

Unum and its medical experts found that in the context of this case and the limitations on the evidence and medical evidence the late notice precluded Unum from conducting an adequate investigation.  Unum and its medical experts found that in the context of this case and the limitations on the evidence and medical evidence there was insufficient proof for Shimomura's claim under the plan.  The Court should enter final judgment for Unum and deny Shimomura's motion for judgment.

DATED this 16th day of August, 2023.

KILMER, VOORHEES & LAURICK, P.C.

*/s/ Robert B. Miller*
Wm. Jere Tolton, III, OSB No. 192692
jtolton@kilmerlaw.com
Robert B. Miller, OSB No. 960068
RBMillerConsulting@gmail.com

M:\10126\0104\Pleadings\Objections to F&R 2023-0816.docx

KILMER, VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290